IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN ELLIOT MORANT, SR., | : | |
|    Plaintiff, | : | |
| | : | |
| v. | : | Case No. 5:23-cv-0054-JDW |
| | : | |
| DOCTOR WILLIAM CATTELL, *et al.*, | : | |
|    Defendants. | : | |

## MEMORANDUM

Shawn Elliot Morant alleges Dr. William Cattell, Nurse Shayne Goodman, and Jessica Lord (the Medical Defendants) knew he needed a hip replacement and intentionally prevented his surgery, in violation of his constitutional rights. He also says that Defendant Warden Cheryl Steberger violated his rights because Lancaster County Prison ("LCP") didn't have an infirmary on its premises for inmates to recover from surgeries. The Medical Defendants and Warden Steberger move separately to dismiss Mr. Morant's complaint. I now resolve those motions.

**I.  BACKGROUND**

   **A.  Facts**

Mr. Morant became a pretrial detainee at LCP on January 11, 2021. During intake, he informed LCP medical staff that he needed hip surgery. The prison assigned Ms. Lord as his healthcare specialist, and she examined Mr. Morant and prescribed him medication. Mr. Morant complained to Ms. Lord about the pain in his hip for six months.

On July 1, 2021, Dr. Kutz, an orthopedic surgical specialist, performed an x-ray on Mr. Morant's right hip and determined he needed surgery. Mr. Morant agreed to undergo surgery on the hip. Dr. Kutz made a note in Mr. Morant's file and said he'd perform the surgery within two weeks.

When Mr. Morant returned to LCP, Ms. Lord told him that she needed to consult with Dr. Cattell and other medical staff at the prison to determine whether they would approve his surgery. Several months later, Mr. Morant still hadn't received a response, so he reached out to Ms. Lord to ask about the status of his surgery request. He told her the pain in his hip had increased to the point that it was hard to walk. Ms. Lord responded that LCP staff would not approve the surgery because the prison didn't have an infirmary where he could recover. She said he'd have to wait until his release or until he transferred to state prison. Regardless, she told Mr. Morant that she'd resubmit his request for surgery. She did so on November 3, 2021.

By April 2022, Mr. Morant hadn't received an answer to his renewed surgery request, so he filed a grievance. Nurse Goodman responded on April 25, 2022 and said she would come to LCP to speak with him about his hip within two weeks. She never did.

Mr. Morant saw Dr. Kutz again on August 11, 2022. Dr. Kutz observed that there was no cartilage left in Mr. Morant's hip. Dr. Kutz said he didn't know how Mr. Morant had "been dealing with bone-on-bone grinding." After that examination, Mr. Morant continued to complain about the pain in his hip and wrote grievances to prison staff

asking to approve his surgery. Mr. Morant eventually received a hip replacement surgery, although he doesn't allege the date when it occurred.

Mr. Morant spent one night in the hospital recovering from his surgery before he returned to LCP. Because LCP doesn't have an infirmary, he returned to his regular cell in general population. There, another inmate attacked Mr. Morant outside of his cell.

### B.     Procedural History

Mr. Morant filed this Complaint on January 3, 2023, seeking damages for medical neglect and deliberate indifference to a serious medical need from the Medical Defendants, and for cruel and unusual punishment from Warden Steberger. The Medical Defendants filed a Motion To Dismiss on April 24, 2023. I denied that Motion as moot because Mr. Morant requested leave to amend his Complaint, which I granted. Mr. Morant never amended his Complaint, and Warden Steberger filed a Motion To Dismiss on June 5, 2023. After Mr. Morant responded to that Motion, I vacated my prior Order and reinstated the Medical Defendants' Motion. I provided Mr. Morant an opportunity to respond to the Medical Defendants' Motion. On July 27, 2023, Mr. Morant renewed his Motion To Amend. All Motions are fully briefed, and I now resolve them.

## II.    LEGAL STANDARD

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader

is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786-87 (same). First, the court must identify the elements needed to set forth a particular claim. *See id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *See id.* Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

### III.   MOTIONS TO DISMISS

Mr. Morant brings claims under 42 U.S.C. § 1983. The Eighth Amendment's prohibition on cruel and unusual punishment doesn't apply until after a prisoner has been sentenced and convicted. *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005). Instead, the Fourteenth Amendment's Due Process Clause governs a pretrial detainee's claims of unconstitutional punishment. *See id.* at 165. "[T]he Fourteenth Amendment affords pretrial detainees protections at least as great as the Eighth Amendment protections

available to convicted prisoners." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

### A. Claims Against Warden Steberger

Mr. Morant's claim against Warden Steberger is for cruel and unusual punishment based on LCP's lack of an infirmary for inmates who undergo surgeries, which he says is a dangerous condition that led to the assault against him while he was recovering. A condition of confinement is unconstitutional if "there is a showing of express intent to punish on the part of detention facility officials, when the restrictor or condition is not rationally related to a legitimate non-putative government purpose, or when the restriction is excessive in light of that purpose." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quotation omitted). Unconstitutional punishment includes both objective and subjective components. *See id.* The objective component examines "whether the deprivation was sufficiently serious, and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (quotes omitted). Additionally, to state a claim under Section 1983, the plaintiff must show the defendant had personal involvement in the constitutional violation. *Lawson v. Banta*, No. 20-3444, 2022 WL 1772997 at *2 (3d Cir. 2022) (per curiam) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993)).

I'll dismiss Mr. Morant's claim against Warden Steberger for two reasons. *First*, he hasn't pled Warden Steberger's personal involvement in the alleged constitutional

5

violations. Even if the prison does not have an infirmary, Mr. Morant does not plead that Warden Steberger had anything to do with the design of the prison or the decision to omit an infirmary from its construction. Therefore, he can't state a claim against her under Section 1983. *See Lawson*, 2022 WL 1772997 at *2. *Second*, nothing in the Complaint suggests the lack of rehabilitation facilities at LCP was intended to punish any inmate. Therefore, even if Warden Steberger personally decided LCP shouldn't have an infirmary for post-surgery inmates, Mr. Morant hasn't pled the requisite intent for a Fourteenth Amendment claim.

### B. Claims Against Medical Defendants

Mr. Morant states claims against the Medical Defendants for deliberate indifference to his serious medical needs, so I won't dismiss them. Intentionally denying or delaying a prisoner's access to medical care violates the Eighth Amendment when a plaintiff shows (1) the defendants were deliberately indifferent to his medical needs, and (2) the medical needs were serious. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017). A medical need is serious when it is "so obvious a lay person would recognize the necessity for a doctor's attention." *Atkinson v. Taylor*, 316 F.3d 257, 272-23 (3d Cir. 2003). A prison official acts with deliberate indifference when he intentionally delays or denies access to medical care for non-medical reasons. *Natale*, 318 F.3d at 582 (3d Cir. 2003).

Based on the facts in the Complaint, the Medical Defendants were aware of the severe pain in Mr. Morant's hip. They also knew that his condition was deteriorating, that it inhibited his ability to walk or stand, and that a specialist twice recommended surgery. Any lay person would understand the need for treatment in this case, but the Medical Defendants nonetheless delayed treatment for a year and a half. The lack of an infirmary or rehabilitation room at LCP isn't a sufficient medical reason to deny care. *See id.* Therefore, Mr. Morant pleads the Medical Defendants were deliberately indifferent to his serious medical needs, and I won't dismiss the Complaint against them.

The Medical Defendants' argument that the surgery was elective, therefore it can't constitute a constitutional violation, is unpersuasive because it's not obvious the surgery was elective. Viewed in the light most favorable to Mr. Morant, Dr. Kutz didn't ask him to elect surgery, he asked him if he consented to it. Mr. Morant did consent, so Dr. Kutz made a note that he'd move forward with the surgery. And, while any surgery to treat a non-life-threatening condition is in some sense elective, some conditions are so debilitating that they require surgery even if a patient won't die without it. To the extent the Medical Defendants argue otherwise, their view of the Fourteenth Amendment is too restrictive.

Additionally, the argument that pretrial detention is meant to be short, therefore it alters the standard for whether surgery should wait until after a prisoner is convicted or released, has no bearing based on the facts in this case for three reasons. *First*, because

the surgery wasn't elective. *Second*, because Dr. Kutz intended to perform the surgery within two weeks of Mr. Morant's initial visit, indicating that time was of the essence and that he would perform the surgery well before Mr. Morant's release or conviction. *Third*, because regardless of what standard applies, it was unreasonable, given these facts and Mr. Morant's consistent complains and grievances, to delay care for over a year and a half. Therefore, under any standard, Mr. Morant states a claim against the Medical Defendants for violating his constitutional rights.

## IV.    MOTION TO AMEND

I granted Mr. Morant leave to amend his Complaint, but he didn't understand the procedure for doing so. He filed a new Motion To Amend to explain that misunderstanding and to renew his request. I would let him amend his Complaint now, but I think his case and his new complaint will benefit from the advice of counsel. Therefore, I'll deny the Motion without prejudice and place this case in civil suspense while I place the case on the Court's Prisoner Civil Rights Attorney Panel. If no lawyer accepts the case, then I will revisit amendment.

## V.    CONCLUSION

Bone on bone grinding is an excruciating ailment. To suffer from it while in prison due to the deliberate indifference of prison medical staff is unacceptable. Mr. Morant will have a chance to prove the Medical Defendants, and any other defendants he intends to join, violated his rights. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
_____
**JOSHUA D. WOLSON, J.**

September 8, 2023